IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN FERRARA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-3013 |
| | : | |
| v. | : | |
| | : | |
| PATRICIA PIAZZA; UNKNOWN PAROLE OFFICER; PAROLE AGENT ROGERS; SUPERVISOR DELUCA; and STATE PAROLE OFFICE; and PENNSYLVANIA BOARD OF PROBATION AND PAROLE, | : : : : : : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                                                              October 28, 2022

A parolee has sought leave to proceed *in forma pauperis* in this action where he attempts to assert constitutional violations using 42 U.S.C. § 1983 against the mother of his son, three parole officers (one of whom is unidentified), and the state parole office. The parolee appears to allege that, during his parole supervision, the mother of his son, with whom he is in a custody dispute, relayed false claims to his parole officers, which caused them to request that he personally appear at the parole office. After arriving at the parole office, the parolee was brought into a room where one of the parole officers slammed his face into a wall and placed restraints on his ankles and wrists. Although the parolee tried to explain that the allegations against him were untrue, the parole officers disregarded his assertions. By the time the parolee left the office, the parole officers had placed a GPS monitor on his ankle.

The parolee claims that he suffered a significant injury to his eye due to his face hitting the wall. He also asserts that his GPS bracelet is embarrassing and costing him employment opportunities. He seeks significant monetary damages against the defendants.

The court will grant the parolee leave to proceed *in forma pauperis*. In addition, the court will (1) dismiss with prejudice the parolee's claims against the state parole office because it is not a person amenable to suit under section 1983 and is otherwise entitled to Eleventh Amendment immunity, (2) dismiss with prejudice the parolee's claims against the mother of his son because she did not act under color of state law in this case, and (3) dismiss without prejudice the parolee's claims based on his conditions of parolee, *i.e.*, the requirement that he wear a GPS ankle monitoring device, for the failure to state a claim. The court will permit the parolee to proceed on his excessive force claim against an unidentified parole officer.

I. **ALLEGATIONS AND PROCEDURAL HISTORY**

The *pro se* plaintiff, John Ferrara ("Ferrara"), commenced this action by filing an application for leave to proceed *in forma pauperis* (the "IFP Application"), complaint, and motion for appointment of counsel, which the clerk of court docketed on July 26, 2022. *See* Doc. Nos. 1–3. In the complaint, Ferrara asserts claims under 42 U.S.C. § 1983 relating to alleged violations of his civil rights in connection with his parole supervision. *See* Compl. at ECF p. 2, Doc. No. 2. Ferrara names as defendants (1) Patricia Piazza, (2) an unknown parole officer, (3) Parole Agent Rogers, (4) Supervisor DeLuca, (5) the State Parole Office, and (6) the Pennsylvania Board of Parole and Probation. *See id.* at ECF pp. 1–2, 6–7.

As for his substantive allegations, Ferrara avers that on May 21, 2022, he received a phone call to come pick up his son at the home of Patricia Piazza ("Piazza"),[1] because she "was drunk

---

[1] Ferrara identifies Piazza as the mother of Ferrara's son, and Ferrara has indicated that he is involved in a custody dispute with Piazza. *See* Compl. at ECF pp. 3, 8.

2

[and] trashed the house." *Id.* at ECF p. 3. Ferrara went to Piazza's house to pick up his son, and while there, he got into an argument with Piazza and her brother-in-law. *See id.* At the time, Piazza's brother-in-law was drunk, and he "took a swing" at Ferrara, which caused Ferrara to have to defend himself. *See id.* Ferrara also alleges that Piazza "hit [him] from behind as [he] walked out the door."[2] *Id.*

Ferrara alleges that on June 29, 2022, his parole officer, Parole Agent Rogers, texted him and told him that he wanted him to report "in person to 13th and Clearfield on 6/30/2022." *Id.* at ECF pp. 3, 8. Ferrara went to that location on June 30, 2022, and, after going through the metal detector, Agent Rogers told him to report to room four. *See id.* at ECF pp. 3, 8. When Ferrara entered room four, an unknown parole officer placed Ferrara's hands behind his back and threw him against a wall, causing Ferrara's right side of his face to strike the wall. *See id.* at ECF p. 3. Ferrara was then handcuffed and shackled with leg irons. *See id.*

Agent Rogers and Supervisor DeLuca came into the room and asked Ferrara if he knew why he was asked to report. *See id.* Ferrara responded that he did not know, and he advised the agents that he had been complying with the terms of his parole. *See id.* Ferrara claims that he was detained at the parole office for four hours and was fitted with a GPS monitoring bracelet.[3] *See id.* at ECF pp. 3, 8.

Ferrara asserts that he has produced documentation to Agent Rogers and Supervisor DeLuca to demonstrate "the unscrupulous actions of Miss Piazza in the past and present" because

---

[2] Ferrara attaches a police domestic violence report from the Philadelphia Police Department, dated May 21, 2022, which indicates that on that date, police were called to 1932 Auth Street in Philadelphia, by Piazza. *See* Compl. at ECF p. 17. Although the offender's name is blacked out on the report, the offender is identified as a 56-year-old white male. *See id.* The report also indicates that the parties, who both appeared to be intoxicated, were "involved in a dispute over property and living conditions" that have been going on for at least four months. *See id.* at ECF p. 18.

[3] According to the written instructions for Ferrara's special probation/parole, Ferrara was placed on a GPS curfew requiring him to be physically inside his approved residence between the hours of 1:00 a.m. and 7:00 a.m. every day. *See* Compl. at ECF p. 12. Ferrara asserts that the witness signatures on the instructions for the GPS monitor were left blank, which indicates that "they" violated his civil rights. *See id.* at ECF pp. 3, 12.

she "is known to fabricate stories to slander [Ferrara's] name" and defame his character. *Id.* at ECF p. 9. Ferrara also avers that he has produced documents showing that "Miss Piazza was trying to extort $5,000.00" from him. *Id.* at ECF pp. 9, 19–23. Despite Ferrara providing Agent Rogers and Supervisor DeLuca with these documents, they disregarded them. *See id.* at ECF p. 9.

Ferrara appears to allege that Agent Rogers and Supervisor DeLuca violated his civil rights when they ignored the documentation he submitted concerning Piazza and fitted him with an ankle bracelet "for no apparent reason." *Id.* at ECF pp. 9–10. Ferrara asserts that the ankle bracelet is "embarrassing" and has cost him employment opportunities. *Id.* at ECF p. 10. Ferrara further asserts that the ankle bracelet was unnecessary because he has been "complying with all [his] parole requirements [and has] not been arrested or had any run ins with law enforcement" since November 2016. *Id.*

Because Ferrara was unable to see out of his right eye, he sought treatment at Wills Eye Hospital on July 14 and 16, 2022. *See id.* at ECF pp. 4, 9. Wills Eye staff informed Ferrara that he was experiencing bleeding between his cornea and retina and that he "must see a specialist" for the damage incurred at the parole office. *Id.* at ECF p. 4. Ferrara was given three sets of eyedrops to help dissipate the blood that affected his vision. *See id.* at ECF p. 9.

For damages, Ferrara seeks "one million dollars a day for mental anguish, loss of employment and pain and suffering due to [his] eye injury caused by the unknown officer when [he] was handcuffed and shackled for no apparent reason." *Id.* at ECF p. 10. He also seeks monetary damages because the GPS bracelet was placed on him. *See id.* at ECF p. 4 (indicating that he is seeking "1 million dollars a day because they had to put an ankle bracelet on [him]").

4

## II.     DISCUSSION

### A.     <u>The IFP Application</u>

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Ferrara is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.

**B.     Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Ferrara leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See*

6

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185

(quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### C. Analysis

Ferrara is seeking relief in this case for alleged constitutional violations pursuant to 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). In addition, the plaintiff must allege the personal involvement of each defendant in the alleged constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting Rode, 845 F.2d at 1207)).

### 1. Claims Against the State Parole Office and Pennsylvania Board of Probation and Parole

In the caption of the complaint, Ferrara identifies the State Parole Office and the Pennsylvania Board of Probation and Parole as defendants. *See* Compl. at ECF p. 1. Ferrara has failed to state a plausible claim against these defendants.

8

States and their agencies are not considered "persons" for purposes of section 1983. *See Will v. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Madden v. N.J. State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971) ("[I]t has been squarely held in this Circuit . . . that [a state parole board] is not a person within the language of . . . Section 1983." (citations omitted)). Moreover, the Eleventh Amendment renders a state and its agencies immune from suits in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth has not waived that immunity. *See* 42 Pa. C.S. § 8521(b); *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity).

Pennsylvania's probation and parole departments, which are part of the state unified judicial system, share in the Commonwealth of Pennsylvania's Eleventh Amendment immunity. *See Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. The Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [unified judicial system] are part of the Commonwealth government rather than local entities. As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity." (internal citations omitted)). As such, Ferrara may not proceed on his claims for money damages against the State Parole Board and the Pennsylvania Board of Probation and Parole. *See Moore v. Chester Cnty. Cts.*, Civ. A. No. 21-5230, 2022 WL 742708, at *3 (E.D. Pa. Mar. 10, 2022) (dismissing section 1983 claim against state parole board). Accordingly, the court will dismiss

Ferrara's claims against the State Parole Board and the Pennsylvania Board of Probation and Parole.

### 2. Claims Against Piazza

While the precise legal theory underlying these constitutional claims is unclear, it appears that Ferrara's claims against Piazza are based solely on "false accusations" she made to his parole officers. *See* Compl. at ECF p. 8. Ferrara asserts that Piazza "is known to fabricate stories to slander [his] name" and defame his character. *Id.* at ECF p. 9.

The court must dismiss any section 1983 claim for constitutional violations against Piazza because she is not a "state actor" subject to liability under section 1983. With regard to this state action issue:

> [t]he color-of-state-law requirement is a threshold issue; "there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995). To show that the defendant acted under color of state law, a litigant must establish that the defendant is a "state actor" under the Fourteenth Amendment. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 169 n. 1 (3d Cir.2004).

*Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam).

The "touchstone" of the state-action inquiry centers on the proposition that "state action may be found if, though only if, there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the [s]tate itself." *P.R.B.A. Corp. v. HMS Host Toll Rds., Inc.*, 808 F.3d 221, 224 (3d Cir. 2015) (internal quotation marks and citations omitted). The Third Circuit has

> outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:
>
> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far

> insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and citation omitted).

Presuming that the court's interpretation of the complaint is correct, Ferrara is not a state actor for purposes of section 1983. "Complaining in person to the police or filing a civilian criminal complaint are not acts of the State; they are acts that anyone can do. Filing a report or a civilian complaint does not transform a private citizen into a State actor." *Sous v. Timpone*, Civ. No. 15-7972 (KM) (MAH), 2016 WL 2625325, at *4 (D.N.J. May 9, 2016) (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144–45 (D.N.J. 2007)). Also, participation in the related police investigation also does not render a private person a state actor for purposes of section 1983. *See Baack v. Rodgers*, Civ. No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) (rejecting section 1983 false arrest claim against hospital and two of its employees who filed police report regarding plaintiff's conduct because "reporting suspicious conduct to the police—or answering police questions about that conduct—without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *Collins v. Christie*, Civ. A. No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."); *O'Neil v. Beck*, No. Civ.A. 1:04-CV-2825, 2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (concluding that allegations that private citizen filed false police report and wanted to see plaintiff arrested are "simply insufficient" to establish that private citizen is state actor for purposes of claim brought pursuant to section 1983). Therefore, the court will dismiss with prejudice Ferrara's section 1983 claims against Piazza for the failure to state a claim.[4]

---

[4] To the extent Ferrara is bringing claims based on allegations of "slander," his conclusory allegations do not establish a basis for a constitutional violation or a violation of state law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236

### 3. Excessive Force Claim Against the Unknown Parole Officer

The court understands Ferrara to be asserting constitutional claims based on the use of excessive force by an unknown parole officer who threw Ferrara against a wall, causing him to strike the right side of his face and ultimately resulting in a significant injury to his eye for which he sought medical treatment. *See* Compl. at ECF pp. 3, 8. "Claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989);[5] *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test." (citing *Graham*, 490 U.S. at 395)). The elements of an excessive force claim arising out of or occurring during an arrest are as follows:

> An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990). Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force. *Edwards v. City of Phila.*, 860 F.2d 568, 572 (3d Cir. 1988).
>
> When a police officer uses force to effectuate an arrest that force must be reasonable. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness inquiry is objective, but should give appropriate scope to

---

(3d Cir. 2006) (noting that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest").

[5] Ferrara's excessive force claim is properly analyzed under the Fourth Amendment standard. *Cf. Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) (holding that excessive force claim stemming from arrest of parolee arose under Fourth Amendment and was not affected by plaintiff's parole status).

12

the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." *Id.* at 397, 109 S.Ct. at 1872.

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995).

Here, Ferrara asserts allegations that an unknown parole officer used an unreasonable amount of force against him. This force included throwing Ferrara "against the wall on [the] right side of [his] face," causing a loss of vision, and handcuffing and shackling him with leg irons. *See* Compl. at ECF pp. 3, 8. These allegations are sufficient to maintain a claim against the unknown parole officer. As such, the court will permit this claim to proceed to service, with the following caveat.

Although Ferrara is entitled to service by the United States Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it is highly unlikely the Marshals Service could properly serve the summons and complaint without more precise identifying information for the individual involved in this claim such as the individual's last name, first name, rank, physical description, etc. Therefore, to ultimately facilitate a more effective attempt at service by the Marshals, the court is inclined to adopt the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998).

In *Davis*, the Second Circuit recognized that under certain circumstances a court should not dismiss an otherwise colorable constitutional claim against supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the subordinate officials who have personal liability. 160 F.3d at 920–21 (observing that "courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability"). The Third Circuit Court of Appeals has not

13

explicitly adopted the *Davis* approach; however, in *Wyatt v. Municipality of Commonwealth of Philadelphia*, 718 F. App'x 102, 103–04 (3d Cir. 2017) (per curiam), the Third Circuit recognized the difficulties presented where a *pro se* plaintiff could only provide limited information for the United States Marshals Service for purpose of serving the defendants identified as employees of the City of Philadelphia. When the City claimed it could not accept service without the defendants' full names, and the *pro se* plaintiff could not provide that information, the district court dismissed the complaint for failure to timely effect service under Rule 4(m) of the Federal Rules of Civil Procedure. *Wyatt*, 718 F. App'x at 104. Thereafter, the plaintiff filed a separate suit against the City for failing to accept service in the original action. *See id.* The district court also dismissed this suit, and the plaintiff appealed this decision to the Third Circuit. *See id.*

On appeal, the Third Circuit noted that where a *pro se* plaintiff initially sued prison officials in their official capacities, he "effectively sought relief against the City" of Philadelphia. *Id.* Accordingly, the Third Circuit vacated and remanded the plaintiff's subsequent action and directed the district court to consolidate the cases. By way of the consolidation, the Third Circuit indicated that "[n]ow that the City will be a defendant, service on the City itself should be easily effected and the City should take appropriate steps to identify the individual defendants based on the information Wyatt has provided." *Id.* at 105.

Based on the Third Circuit's approach in *Wyatt*, the Circuit seems to have implicitly sanctioned the use of an employer or supervisor as a placeholder for the unknown defendants for the limited purpose of assisting the *pro se* plaintiff to obtain sufficient information to identify the defendants to effect proper service. As such, based on *Davis* and *Wyatt*, it appears that the prudent course of action for the court to follow at this time is to maintain the State Parole Office as a defendant in this matter for the limited, and sole purpose, of allowing the Marshals Service to serve

a copy of the summons and complaint, along with a copy of this memorandum opinion and its accompanying order, so that the State Parole Office may assist Ferrara in identifying the unknown parole officer who allegedly used unreasonable force against him. At such time that Ferrara can identify an actual defendant, the court will dismiss the State Parole Office as a placeholder for this defendant. Should Ferrara still be unable to identify this defendant after reasonable efforts and assistance from the State Parole Office, the court will entertain whatever motions for relief the State Parole Office seeks to bring.

### 4. Claims Against Parole Agent Rogers and Supervisor DeLuca

Ferrara avers that his civil rights were violated when Agent Rogers and Supervisor DeLuca fitted him with a GPS monitoring ankle bracelet in response to Piazza's "false allegations." Compl. at ECF pp. 9–10. This averment fails to state a plausible substantive due process claim under the Fourteenth Amendment, or any other cognizable constitutional claim related to the conditions of his parole.

A parolee, like Ferrara, "does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions.'" *Johnson v. Mondrosch*, 586 F. App'x 871, 874 (3d Cir. 2014) (per curiam) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)); *see also Scheer v. Fish*, Civ. A. No. 2:21-CV-949-CRE, 2022 WL 4094414, at *5 (W.D. Pa. Sept. 7, 2022) (citing *Johnson*). Thus, "[r]estrictions to a particular community, job or home, as well as restrictions on travel or movement, are standard conditions of parole[.]" *Johnson*, 586 F. App'x at 874 (citing *Morrissey*, 408 U.S. at 478).[6] Also, probationers and parolees are commonly subject to a number of conditions which will comport

---

[6] In *Johnson*, the Third Circuit determined that a parolee complaining that the conditions of his parole, including a 7:00 p.m. curfew, restricting the parolee's movements, and requiring him to get an eight-hour per day job, stated no colorable constitutional claim. 586 F. App'x at 873–74.

15

with the limited rights afforded to them – such as drug tests, restrictions on houses, jobs, travel, or the like. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119 (2001) (explaining that probationers are subject to reasonable conditions and have limited liberty interests); *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (explaining that forms of supervised release such as probation are "form of punishment" and may lawfully include restrictions on housing, drug use, or the like). Moreover, the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a released prisoner whose conditions of release provide for suspicionless searches. *See Samson v. California*, 547 U.S. 843, 847 (2006). Relying on this premise, courts have upheld the use of GPS monitoring as a condition of supervised release. *See, e.g.*, *United States v. Ringgenberg*, 494 F. App'x 685, 685 (8th Cir. 2012) (unpublished); *United States v. Watson*, 204 F. App'x 309, 310 (4th Cir. 2006) (unpublished).

To adequately state a substantive due process claim,[7] a plaintiff must show that they have a fundamental right that is protected from arbitrary or capricious deprivation. *See Scheer*, 2022 WL 4094414, at *5 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000)). Here, although Ferrara avers that the conditions of his supervision were amended to include GPS monitoring, he has not described the nature of his underlying conviction or the conditions to which he was subject prior to the addition of GPS monitoring. Furthermore, Ferrara has not provided any information concerning the reason for the imposition of GPS monitoring or any post-deprivation remedies available to him and his use of those remedies.[8] Therefore, Ferrara has not stated a plausible substantive due process claim that

---

[7] A plaintiff has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn*, 975 F. Supp. 761, 764–65 (E.D. Pa. 1997), *aff'd*, 151 F.3d 1025 (3d Cir. 1998); *accord Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991) (recognizing that release statutes can create 'a liberty interest protected by due process guarantees'" (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979))).
[8] Indeed, the written instructions imposing the GPS condition on Ferrara provides a process for appealing the condition. *See* Compl. at ECF p. 12. It is unclear whether Ferrara availed himself of this or any other remedies available to him and, if so, why these procedures were insufficient. *See generally Dist. Attorney's Off. for Third Jud. Dist. v.*

the decision to alter his parole conditions was arbitrary or constitutionally impermissible. In the absence of a factual context, the fact of changed conditions of supervision, alone, does not state a claim for violation of due process rights. *See Dastas v. Ross*, Civ. A. No. 11-4062, 2012 WL 665630, at *4–5 (D.N.J. Feb. 29, 2012). Accordingly, Ferrara has not shown that his GPS monitoring requirement is a violation of his civil rights, and the court will dismiss this claim without prejudice.

## III. CONCLUSION

For the foregoing reasons, the court grants Ferrara leave to proceed *in forma pauperis*. The court will also dismiss with prejudice Ferrara's section 1983 claims against the State Parole Office, the Pennsylvania Board of Probation and Parole, and Piazza because these claims are implausible. Further, the court concludes that amendment of these claims would be futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that district court ordinarily must grant leave to amend, even without plaintiff requesting leave to amend, "unless amendment would be inequitable or futile").

As for Ferrara's claim based on his conditions of parole, *i.e.*, the requirement that he wear a GPS ankle monitoring device, the court dismisses this claim without prejudice for the failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Concerning his excessive force claim against the unknown parole officer, this claim is sufficient to pass section 1915 screening.

---

*Osborne*, 557 U.S. 52, 71 (2009) ("It is difficult to criticize the State's procedures when [a plaintiff] has not invoked them."). Accordingly, it is difficult to discern a plausible basis for a procedural due process claim here.

17

The court will provide Ferrara with the option of proceeding at this time on his excessive force claim against the unknown parole officer or filing a comprehensive amended complaint with respect to any claims the court is dismissing without prejudice. If Ferrara chooses not to file an amended complaint, the court will direct service only as to the unknown parole officer so that Ferrara may proceed on his excessive force claim.[9]

The court will enter a separate order.[10]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[9] In this circumstance, as discussed above, the State Parole Office will be maintained as a defendant for purposes of service only.

[10] This order will provide further guidance to Ferrara about his options for proceeding in this case.